UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.

                                  CASE NO. 8:22-cr-369-KKM-AAS

EMMANUEL AYALA

**UNITED STATES' RESPONSE IN**
**OPPOSITION TO AYALA'S MOTION TO DISMISS**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits its response in opposition to Emmanuel Ayala's Motion to Dismiss (Doc. 23). Ayala advances the following arguments in an effort to dismiss the Indictment:

1. The offense alleged in Count One (18 U.S.C. § 930) is unconstitutional as applied to Ayala because it infringes on his Second Amendment right to carry or possess a firearm for self-defense;

2. Section 930 is unconstitutionally vague as applied to Ayala under the Fifth Amendment's Due Process Clause; and

3. Ayala lawfully evaded an illegal arrest and should not face prosecution under section 111.

*See* Doc. 23.

**Procedural History**

On or about September 26, 2022, a federal grand jury returned an indictment charging Ayala with violations of 18 U.S.C. § 930 (Count One) and 18 U.S.C. § 111 (Count Two). Doc. 1. Count One alleges that Ayala:

> "did knowingly possess and cause to be present a firearm, that is, a Smith & Wesson 9MM firearm, in a federal facility."

Count Two alleges that Ayala:

> "did forcibly resist, oppose, impede, and interfere with an officer and employee of the United States, while that officer and employee of the United States was engaged in the performance of official duties."

On or about November 16, 2022, Ayala self-surrendered pursuant to an arrest warrant that was issued on or about November 26, 2022, based on the above-detailed charges (Doc. 16). Ayala was ordered released on conditions pending trial (Doc. 17).

**Memorandum Of Law**

Federal Rule of Criminal Procedure 12(b)(3)(B) provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). When ruling on a motion to dismiss an indictment for failure to state an offense, "a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). The court must view that language "in the light most favorable to the government." *Id.* at 1258.

"The propriety of granting a motion to dismiss an indictment under [Fed. R. Crim. P.] Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974).[1] Because the sufficiency of an indictment is determined on its face, it is reversible error for a Court to look beyond the face of the indictment in ruling on a motion to dismiss for failure to state an offense. *See generally Sharpe*, 438 F.3d 1257 (reversing dismissal of indictment where "the allegations in the indictment were sufficient to state the charged offenses as a matter of law … because the counts contained all of the elements of the offense charged and informed the defendants of the charges they faced"); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (reversing the dismissal of an indictment and explaining "[t]here is no summary judgment procedure in criminal cases" … "[n]or do the rules provide for a pre-trial determination of sufficiency of the evidence.").

Under Fed. R. Crim. P. 7(c), "[t]he indictment [] must be a 'plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" The indictment is sufficient if "[i]t (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

against double jeopardy for any subsequent prosecution for the same offense." *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007) (quoting *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002)).

The indictment against Ayala is sufficient to satisfy the requirements that the Eleventh Circuit has articulated. The charges detailed in the indictment present the essential elements of the charged offenses, notify Ayala of the charges to be defended against, and specify precisely the type of weapon in question, enabling Ayala to rely upon a judgment under the indictment as a bar against double jeopardy.

I.     **The Indictment does not violate Ayala's Second Amendment liberties.**

The Second Amendment recognizes "the right of the people to keep and bear Arms" and says that this right "shall not be infringed." U.S. Const. amend II. Yet that right "is not unlimited," *D.C. v. Heller*, 554 U.S. 570 (2008), and the Second Amendment is not a "regulatory straightjacket," *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2133 (2022). The Second Amendment does not prohibit laws forbidding the carrying of firearms in sensitive places, such as schools and government buildings. *D.C. v. Heller*, 554 U.S. 570 at 2786, *N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*, 142 S. Ct. 2111 at 2118. A government building has been deemed a sensitive place that can ban the carrying of firearms while not violating an individual's Second Amendment rights and is consistent with the Nation's historical tradition of firearm regulation. *Id.* at 2117-2118.

In this case, Ayala carried his Smith & Wesson 9mm firearm into a United States Postal Service (USPS) federal facility within the Middle District of Florida. Any legal ability to carry a firearm halts once an individual enters a government facility, which includes this USPS facility. Ayala's Second Amendment right was not violated by his inability to carry his firearm into the USPS federal facility, as the federal facility has been deemed a sensitive place consistent with the United States' historical tradition of firearm regulation.

**II.    Ayala's argument that the charged offense is unconstitutionally vague and violates the Fifth Amendment's Due Process Clause is foreclosed by Eleventh Circuit Precedent.**

Despite Ayala's contention, Doc. 23 at 13, the Supreme Court's decision in *Johnson v. United States*, 132 S. Ct 2561 (2020), does not overrule the Eleventh Circuit's precedent in *Marte*. The void-for-vagueness doctrine requires that a penal statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002) (citation and internal quotation omitted), *cert. denied*, 537 U.S. 1112 (2003). "Except where First Amendment rights are involved, vagueness challenges must be evaluated in the light of the facts of the case at hand." *Id. United States v. Marte*, 356 F.3d 1336. 1343 (11th Cir. 2004).

In *Johnson*, the Supreme Court held that the Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of

law." Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983). The prohibition of vagueness in criminal statutes "is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law," and a statute that flouts it "violates the first essential of due process." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences. *United States v. Batchelder*, 442 U.S. 114, 123 (1979). *Johnson v. United States*, 576 U.S. 591, 595–96 (2015). Although *Marte* predates *Johnson*, a review of the two opinions shows that *Johnson* relied on *Kolender* and *Connally*. *Marte* relied on *Fisher*, which also relies on *Kolender*. The underpinning of both decisions relied on the holding in *Kolender.* Given these overlapping legal foundations, *Johnson* did not overrule *Marte*, and it remains binding precedent in the Eleventh Circuit.

The charged statute, 18 U.S.C. § 930, provides that it is a federal crime to knowingly possess or cause to be present a firearm or other dangerous weapon in a federal facility (other than a federal court facility), or to attempt to do so. The statute details exceptions for individuals who would not commit a federal crime by knowingly possessing a firearm in a federal facility. Specifically, the law does not apply to: (1) the lawful performance of official duties by an officer, agent, or employee of the United States, a State, or a political subdivision thereof, who is

authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of law; (2) the possession of a firearm or other dangerous weapon by a federal official or a member of the Armed Forces if such possession is authorized by law; or (3) the lawful carrying of firearms or other dangerous weapons in a federal facility incident to hunting or other lawful purposes. 18 U.S.C. § 930(d).

Ayala does not fall within subsection (d)(1) of 18 U.S.C. § 930. Ayala's employment as a truck driver with USPS does not entail him engaging in official duties to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of law. Therefore, his possession of a firearm would not be exempt under this exception.

Likewise, Ayala does not fall within subsection (d)(2) of 18 U.S.C. § 930. Although his employment with USPS would make him a federal employee, possession of a firearm by a USPS employee is not authorized by law within federal USPS facilities. As set out in the government's discovery in this case, all USPS employees are provided an Administrative Support Manual during their orientation. Section 276 of that manual addresses firearms, specifically. That section provides that, unless authorized by the chief postal inspector or inspector general, Postal Service employees are prohibited from possessing firearms in the following instances: (a) while on official duty, either on or off Postal Service property; (b) while on or within Postal Service property at any time. This section further specifies that "possessing" includes the carrying or storing of firearms.

7

Additionally, Ayala possessed a Florida license to carry a concealed weapon or firearm. Applicable Florida law provides that an individual can obtain a license to carry a concealed weapon or firearm; however, that individual is not authorized to carry a concealed weapon or firearm into any place where the carrying of firearms is prohibited by federal law. Fla. Stat. § 790.06(12)(a). The statute specifies that even if an individual has a license to carry a concealed weapon or firearm, the license does not authorize a person to carry a concealed weapon or firearm into "any place where the carrying of firearms is prohibited by federal law". Fla. Stat. § 790.06(12)(a)(15).

Meanwhile, there is no evidence in this case that Ayala carried his concealed firearm during his employment with USPS on multiple dates incident to hunting or other lawful purposes. Accordingly, he is not exempt from prosecution under subsection (d)(3) of 18 U.S.C. § 930.

Ultimately, the statute is not vague as it applies to Ayala because it clearly details that he does not fall within any of the exemptions to be able to lawfully carry his concealed firearm during his employment with USPS. He additionally received notification through his onboarding with USPS as well as during his concealed weapon licensing that he would not be allowed to possess a weapon in a federal facility.

## III.   Ayala is not charged with evading an arrest. Ayala is properly charged under 18 U.S.C. § 111.

Ayala argues that he lawfully evaded an illegal arrest and, thus, should not face prosecution under 18 U.S.C. § 111. Doc. 23 at 18. Section 111 criminally

8

penalizes an individual who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties". Section 1114, meanwhile, provides for the protection of "officers and employees of the United States," applying to "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance."

When they approached Ayala to speak with him on September 14, 2022, Special Agents Scott Cunningham and Jill Younce were acting in their official capacity as special agents with the USPS Office of Inspector General (USPS-OIG). Their entire initial interaction was captured on video surveillance that was provided to Ayala in discovery. The special agents both wore their USPS-OIG badges around their necks, and Special Agent Younce separately showed Ayala her USPS-OIG photo credentials. By repeatedly running away, Ayala did forcibly resist, oppose, impede, and interfere with Special Agents Cunningham and Younce as they were acting in their official capacities as governmental officer. Specifically, those agents were investigating Ayala's behavior on the job, which included allegations of smoking marijuana within his USPS vehicle, racking and possessing a firearm within his USPS vehicle, and bringing his firearm into the USPS Tampa Processing and Distribution Center. Indeed, Ayala had a 9mm pistol in his possession when he was

9

eventually apprehended at the Tampa International Airport. Therefore, the agents were warranted in approaching Ayala with caution and seeking to briefly detain and question him. As the defense points out, "[s]omeone could have gotten seriously injured, hurt, or killed that day," given that Ayala fled throughout Tampa International Airport property carrying a pistol and loaded magazine.

The argument that Ayala resisted an "unlawful arrest" simply does not apply to the facts and circumstances of the encounter that occurred on September 14, 2022. Rather, Ayala forcibly resisted, opposed, impeded, and interfered with USPS-OIG agents as they were attempting to conduct an investigation and perform their official duties that day—knowing that he was likely (and, indeed, was) illegally armed on USPS property.

## IV.    Conclusion

For all the foregoing reasons, the Court should deny the Defendant's motion. The United States further submits that no hearing is necessary given the claims raised and the ability of the pleadings to resolve the Court's questions. *See* Rule 3.01(j), Local Rules, United States District Court, Middle District of Florida.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:      */s/ Abigail K. King*
Abigail K. King
Assistant United States Attorney
Florida Bar Number 294963
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6358
Email: Abigail.king@usdoj.gov

**U.S. v. Emmauel Ayala**          **Case No. 8:22-cr-369-KKM-AAS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

Stephen Consuegra, Esq.

/s/ Abigail K. King
Abigail K. King
Assistant United States Attorney
Florida Bar Number 294963
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6358
Email: Abigail.king@usdoj.gov

12